**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Esther Arias,                                          Case No. 0:19-cv-01326-JRT-KMM

Petitioner,

v.                                                     **REPORT AND**
                                                       **RECOMMENDATION**

Warden Nanette Barnes,

Respondent.

Esther Arias, 26214-038, FCI-Waseca, P.O. Box 1731, Waseca, MN 56093, pro se

Ana H. Voss, Ann M. Bildtsen, Erin M. Secord, United States Attorney's Office, 300 S. 4th St. Ste. 600, Minneapolis, MN 55415, counsel for Respondent

Esther Arias, an inmate at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"), filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, seeking the restoration of good-conduct time that was forfeited after she was found to have violated prison rules established by the Federal Bureau of Prisons ("BOP"). [Pet., ECF No. 1.] Specifically, BOP officials determined that on July 31, 2017, Ms. Arias improperly possessed a cell phone and assaulted a corrections officer. Ms. Arias claims that her good-conduct time must be restored because: (1) the reporting officer fabricated the incident report after she refused to contact an inmate in another BOP facility who is a witness in an Inspector General investigation involving the officer; and (2) prison officials failed to comply with the BOP's procedures governing disciplinary investigations and hearings. [Pet. at 6–8, ¶ 13.] FCI-Waseca's Warden, Nanette Barnes ("Warden Barnes"), asserts that the Petition should be denied because Ms. Arias received constitutionally adequate procedural protections during the disciplinary process and

1

sufficient evidence supports the finding that she violated prison rules. [Resp., ECF No. 8.] For

the reasons that follow, the Court recommends that the Petition be **DENIED**.

## I.      Background

This case involves the process that must be followed when an inmate is accused of

violating BOP rules and disputes the allegations. The relevant aspects of the BOP's procedures

and disciplinary code are outlined below, followed by a discussion of the incident report that led

to the forfeiture of Ms. Arias's good-conduct time.

### A.  The BOP's Inmate Discipline Program

The BOP maintains an Inmate Discipline Program to address how Disciplinary Hearing

Officers ("DHO") handle incident reports regarding violations of prison rules by inmates.

[Craddock Decl. ¶ 2, ECF No. 9; *Id.*, Ex. A, ECF No. 9-1.] If a member of the prison staff

believes that an inmate has violated BOP regulations, that staff member will issue an incident

report describing the events and the prohibited acts allegedly committed. [Ex. A at 17.] The

inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of

[her] involvement in the incident." Someone other than the reporting staff member investigates

the "alleged inmate misconduct," which should be finished within 24 hours after the

investigating officer is appointed. [*Id.* at 18.] However, the investigating officer suspends the

investigation if it "appears likely that the incident may involve criminal prosecution," and time

frame for processing the incident report is suspended until the FBI or other investigative agency

releases it for administrative processing. Delivery of the incident report to the inmate may also

be delayed for "good cause," and the reason for any delay "must be documented in the discipline

record." [*Id.*]

Once an investigation is complete, the investigating officer refers the incident report to the Unit Discipline Committee ("UDC") for an initial hearing. [*Id.* at 23.] The UDC usually includes two or more members of the staff who are not victims, witnesses, investigators, or otherwise significantly involved in the incident. However, "[o]ne staff member UDCs are permitted when other members are not reasonably available. [*Id.*] The UDC makes one of the following decisions upon reviewing the incident report: (1) the inmate committed the prohibited acts as charged; (2) the inmate did not commit the acts charged; or (3) the incident report will be referred to the DHO for further review, depending on the seriousness of the charges. [*Id.*] The referral to the DHO is automatic if the inmate is charged with a violation of disciplinary rules in the "Greatest or High severity" category. The UDC ordinarily reviews an incident report within five work days after it is issued. [*Id.* at 24.] If the UDC refers an incident report to the DHO for resolution, the UDC advises the inmate of her rights at the DHO hearing. [*Id.* at 25.]

The DHO only holds hearings on matters referred by the UDC and must be an impartial decision maker who is not a victim, witness, investigator, or someone otherwise involved in the incident. [*Id.* at 27.] The DHO can reach a decision about whether the inmate committed the prohibited act as charged, or it can refer the incident report for further investigation and review. [*Id.*] The inmate: receives written notice of the charges at least 24 hours before the DHO hearing; is entitled to have a staff representative during the DHO hearing process; may appear before the DHO during the hearing; can make a statement and present documentary evidence to the DHO; and request witnesses to appear before the DHO, subject to the DHO's discretion. [*Id.* at 33.] The DHO provides the inmate with a written report after the hearing, which sets forth the evidence relied upon, the DHO's decision, the sanction imposed, and the reasons for the punishment. [*Id.* at 34–35.]

The list of "Greatest Severity Level Prohibited Acts" in the BOP's inmate disciplinary rules includes Code 108, which applies to, among other things, possession of a "hazardous tool." [Craddock Decl., Ex. A at 44.] Among the "tools" prohibited by Code 108 are "portable telephone[s]," which are considered "hazardous to institutional security or personal safety." [*Id.*] The sanctions for a violation of a prison rule on this list can include: forfeiture of all earned statutory good time or withholding of all non-vested good conduct time; disallowing extra good time; disallowing between 27 and 41 days of good conduct time credit available for a year; disciplinary segregation for up to 12 months; loss of privileges; etc. [*Id.* at 45–46.]

The list of "High Severity Level Prohibited Acts" includes Code 224, which applies when an inmate "[a]ssault[s] any person…." [*Id.* at 47–48.] "[A] charge at this level us used when less serious physical injury or contact has been attempted or accomplished by an inmate." [*Id.*] For references, Code 101, which is among the greatest severity offenses, applies "only when serious physical injury has been attempted or accomplished." [*Id.* at 44.] The sanctions for offenses in the "High Severity Level" category include: forfeiture of up to half earned statutory good time or non-vested good conduct time; disallowing extra good time; disallowing between 14 and 27 days of good conduct time credit available for a year; up to 6 months of segregation; loss of privileges; etc. [*Id.* at 49.]

### B.  Incident Report

The incident giving rise to this case occurred during the early afternoon of July 31, 2017. At that time, Ms. Arias was at the Federal Prison Camp in Danbury, Connecticut ("FPC-Danbury"), a low security federal correctional institution. The reporting officer, Officer Garcia, provided the following account:

> On [July 31, 2017 at 12:15 PM] I went to the Camp weight room to locate the
> wall plugs for the hot box to be used on family day. As I entered the weight room,

4

> I noticed a cellphone connected to a cellphone charger under a mesh bag. As I attempted to retrieve the contraband, Inmate Arias … pushed me forcefully using both hand and using her body to take possession of the bag and stated, "Stop! That's my bag." Inmate Arias took the cellphone and put it in her pocket and began to pace back and forth. When I called the Camp Officer[1] for assistance, inmate Arias took the cellphone out of her pocket and placed it on a workout bench. Inmate Arias stated, "This won't stick. It's your word against mine." As I attempted to retrieve the cellphone from the bench, inmate Arias pushed me with two open hands, scratching my neck. I retrieved the cellphone and contacted the Lieutenant's Office.

[Craddock Decl., Ex. D at 1, 3.] The incident report charged Ms. Arias with violations of Code 108 and Code 224. [*Id.*]

The original incident report indicates that it was delivered to Ms. Arias on August 30, 2017 at 6:15 p.m. [Craddock Decl., Ex. D at 1.] A subsequent copy of the incident report indicates that it was delivered on July 31, 2017 at 6:15 p.m. [*Id.*, Ex. D at 3.] Warden Barnes indicates that the date in the original report was a typographical error that was later corrected. [Craddock Decl. ¶ 9.]

### C. Initial Investigation

Lieutenant S. Gutierrez began investigating the incident later that day. [Craddock Decl., Ex. D at 2.] Lieutenant Gutierrez met with Ms. Arias and advised her that she had the right to remain silent at all stages of the discipline process, that her silence could be used against her, and that silence alone could not be used to support a finding that she committed the prohibited acts. [*Id.*] Ms. Arias provided a statement denying that she possessed the cell phone and assaulted Officer Garcia. [*Id.*] She requested Unit Manager Mitchell as a staff representative and asked Lieutenant Gutierrez to interview inmates MR, FK, CMS, and ASG. [*Id.*; Craddock Decl. ¶ 10.]

---

[1]   The Camp Officer who was called to the gym is identified as Officer Velez. [*See* Craddock Decl. ¶¶ 10, 11, 13 (referring to Officer Velez).]

Lieutenant Gutierrez interviewed the inmates Ms. Arias requested as witnesses. FK stated that she was in the gym when Officer Garcia came in with another inmate checking for plugs. [Craddock Decl., Ex. D at 2.] She explained that Officer Garcia saw a bag with a charger in it, asked whose it was, and Ms. Arias "said it was hers." [*Id.*] FK said that Ms. Arias denied that she had a cell phone, but Garcia found a phone under a green shirt on a bench. [*Id.*] FK's account does not include any statement about a physical assault. [*Id.*] ASG denied being in the gym at the time of the incident. [*Id.*] MR's statement mostly tracked what FK said, but she stated that Ms. Arias ran to her bag when Officer Garcia came into the gym. [*Id.*] She explained that Ms. Arias and Officer Garcia struggled over the bag and he eventually took it from her, locating the charger, which later led to him finding a cellphone beneath a shirt on a piece of gym equipment. [*Id.*] CMS stated that she was checking for plugs in the gym with Officer Garcia, and when the two walked into the gym, Ms. Arias "jumped off" a machine and "went for her bag…." [*Id.*] Officer Garcia asked Ms. Arias for the bag, which she eventually gave to him, and he found a charger. [*Id.*] Officer Garcia was waiting for Officer Velez to come to the gym and Ms. Arias "walked over and placed a t-shirt on the incline bench." [*Id.*] "[Officer] Garcia walked over to where she set the shirt down and found the phone." [*Id.*] CMS stated that "she never saw Garcia touch Arias or Arias touch Garcia." [*Id.*]

Lieutenant Gutierrez offered the following comments and conclusions: "Based on the facts presented in the body of the incident report, and the inmate's comments, it is the conclusion of this investigator the body of the report does not support the charges given." [Craddock Decl., Ex. D at 2.] He referred the matter to the UDC and recommended that the incident be expunged at the DHO level. [*Id.*]

### D. UDC Hearing

The UDC conducted an initial hearing on August 4, 2017. [Craddock Decl., Ex. D at 3.] Ms. Arias denied having a cell phone, stated that she complied with Officer Garcia's orders, and told the UDC that she never touched Officer Garcia. [*Id.*] She stated, "I feel this report is written as revenge" and explained that she was provided a "misdated incident report." [*Id.*] The UDC referred the charges to the DHO for further hearing based on the severity level of the offenses and the inability to impose sanctions at the UDC level. [*Id.*] The UDC advised Ms. Arias of her rights at the DHO hearing. [Craddock Decl., Ex. F.] Ms. Arias requested a staff representative and asked for three witnesses to be called at the hearing to corroborate her version of the events. [*Id.*]

### E. DHO Hearing and Report

DHO J. Potter held a hearing on the incident report on August 23, 2017. [Craddock Decl., Ex. G.] Ms. Arias stated that she did not receive a copy of the incident report within 24 hours of the events. [*Id.* at 2.] However, she confirmed that she received the incident report "[a]bout a week ago from August 8th." [*Id.*] The DHO explained to Ms. Arias that a week before August 8th would correspond to the date reflected in the corrected incident report. [*Id.*] The DHO and Ms. Arias's staff representative also discussed the issue of the misdated incident report. [*Id.* at 1.] The DHO noted that the information in the incident report describing the alleged violations was the same in the report purporting to have been delivered on August 30, 2017 and the report indicating delivery occurred on July 31, 2017. [*Id.*] The staff representative confirmed that Ms. Arias received a copy of the incident report at least 24 hours before the DHO hearing. [*Id.*] Because the August 30th date on the original incident report had not yet occurred by the time of the hearing, the DHO concluded that the investigating officer made an error and

7

Ms. Arias was provided with a new copy of the incident report on July 31, 2017 as indicated in the corrected document. [*Id.*] The staff representative "agreed and stated it is a common mistake." [*Id.*]

As for the merits of the charges against her, Ms. Arias again denied possessing a cellphone and assaulting Officer Garcia. [Craddock Decl., Ex. G at 1.] She claimed not to need a cellphone because she spends a significant amount each month using the prison phone. [*Id.*at 2.] She also denied ever touching Officer Garcia and claimed that he was "trying to set [her] up." [*Id.*] She stated, "The day before the Officer asked me to write to another girl who was an inmate in New York. I wouldn't do it." [*Id.*]

The DHO prepared a report on October 10, 2017.[2] In the report, the DHO noted that he did not call the witnesses Ms. Arias requested because "their knowledge of the events was adequately contained in the supporting document[ation]" from the investigation. [Craddock Decl., Ex. G at 2.] He reviewed documentary evidence, including photographs of a touch-screen cellphone and a medical assessment showing a superficial skin injury on Officer Garcia's neck and a lower back muscle strain. [*Id.* at 3.] The DHO also reviewed photographs of incoming text messages to the cellphone from an individual with the same first name as Ms. Arias's daughter. [*Id.*] These messages came from a phone number ending in 7513 that was the same number Ms. Arias's prison phone records indicated belonged to her "Children." [*Id.*]

The DHO also relied on Officer Garcia's account of the events and noted that the inmate witnesses "all placed the cellphone charger with [Ms. Arias's] bag and … put [her] in direct proximity of the cellphone." [Craddoc. Decl., Ex. G at 3–4.] The DHO noted that one of the

---

[2]   The BOP does not have a record of when Ms. Arias was provided with the DHO's October 10th report. [Craddock Decl. ¶ 16.]

witnesses stated that she never saw Ms. Arias touch Officer Garcia, but she did say that

Ms. Arias tried to keep Officer Garcia from getting her bag. [*Id.* at 4.] Therefore, the DHO found

that the witnesses' statements did not support Ms. Arias's version of events. [*Id.*] The DHO also

found that the staff representative statements did not provide exculpatory evidence and that

Ms. Arias's testimony was not credible. [*Id.*] Based on this evidence, the DHO found that

Ms. Arias committed the prohibited acts. [*Id.*] For the violation of Code 108, the DHO

disallowed 40 days of good conduct time, forfeiture of 100 days of non-vested good conduct

time, and 60 days of disciplinary segregation. [*Id.* at 4–5.] For Code 224, he disallowing 27 days

of good conduct time, disciplinary segregation of 30 days, and loss of phone privileges for 90

days. [*Id.*]

Ms. Arias appealed the DHO's decision on December 13, 2017. [Craddock Decl., Ex. H.]

Although she requested that the incident report be expunged, on February 1, 2018, the Regional

Director instead remanded the incident report to FPC-Danbury for a rehearing. [*Id.* at 1.] The

remand was ordered because the DHO's decision to rely on the earlier witness accounts denied

Ms. Arias the right to have the witnesses appear at the DHO level of the disciplinary process

even though they provided earlier statements. [*Id.* at 2.] It was also determined to be error for the

staff representative to be changed at the DHO level without any indication that Ms. Arias signed

the form acknowledging that the change was required because her requested representative was

unavailable. [*Id.*] Ms. Arias was advised that she could appeal the remand decision to the BOP's

General Counsel. [*Id.* at 1.]

### F.  Rehearing

Ms. Arias had been transferred from FPC-Danbury to the United States Penitentiary at

Bruceton Mills, West Virginia, known as "USP-Hazelton." After the remand, but before

rehearing on the incident report, DHO Kenneth Craddock advised Ms. Arias of her rights during the second DHO hearing and provided an opportunity for Ms. Arias to request witnesses and a staff representative. [Craddock Decl. ¶ 23; *id.*, Ex. I.] Ms. Arias requested Officer Jackson as a staff representative and asked for the Correctional Counselor at FPC-Danbury, L. Foreman, and Officer Velez to be called as witnesses. [Craddock Decl., Ex. J.] DHO Craddock conducted a rehearing on the incident report on April 6, 2018. [Craddock Decl. ¶ 24; *id.*, Ex. K.]

DHO Craddock's report notes that Officer Jackson, Ms. Arias's staff representative, provided the following statement: "[Ms. Arias] asked me to insure her rights were upheld. They were." [Craddock Decl., Ex. K. at 1.] Ms. Arias acknowledged receiving a copy of the incident report, stated that she understood her rights before the DHO, and raised no issues about the discipline process. [*Id.*] In response to Officer Garcia's report, she stated, "This didn't happen. He's lying because I wouldn't talk to the inmate he was involved with. There's an OIG case on him." [*Id.*]

Counselor L. Foreman from FPC-Danbury was not called as a witness given that the rehearing was occurring at USP-Hazelton, but provided a statement via memorandum. [Craddock Decl., Ex. K at 2.] The memo submitted stated:

> On July 31, 2017, I was in my office located at the camp, when an announcement over the radio said "to report to the weight room", which is located outside of the camp facility. As I approached the area, I saw inmate Arias standing on the stairs and she stated, "I didn't have a phone.["] I remember the officer stating he saw the telephone charger coming from her knitted bag leading to the wall where it was being charged.
>
> I did not witness the incident, got to the scene after the incident took place.

[*Id.*]

Similarly, Officer Velez was not called given that the hearing was not taking place at FPC-Danbury. [Craddock Decl., Ex. K at 3.] Officer Velez provided the following account by memorandum:

> On July 31, 2017, at approximately 12:00pm, I was called over the radio by Officer Garcia to report to the camp gym. Once I got to the gym, he showed me a phone charger and said, "There's a phone here," and for me to standby. Garcia then proceeded to search for the cell phone around the bench area near the gym entrance. Garcia was able to find a cell phone under her mesh bag on the bench. At that time, Operations Lieutenant was notified.

[*Id.*]

DHO Craddock found that Ms. Arias committed the violations of Code 108 (possession of a hazardous tool) and Code 224 (minor assault) while at FPC-Danbury. [Craddock Decl., Ex. K at 4.] He found the greater weight of the evidence supported Officer Garcia's written report and version of events. [*Id.*] Regarding Ms. Arias's retaliation defense, the DHO found that Ms. Arias "did not provide, nor did the DHO find, any credible evidence to identify that the reporting officer had fabricated his account of the incident against [her]." [*Id.*] DHO Craddock reasoned that Officer Garcia "has no apparent vested interest in [Ms. Arias] or motive to wrongly implicate [her]," but that she had an "obvious reason to be less than truthful about the incident to avoid the consequences of [her] actions." [*Id.* at 4–5.] Moreover, the witness memoranda did not support Ms. Arias's version of events. [*Id.* at 5.] The DHO also based his finding on the medical report regarding Officer Garcia's injuries and their consistencies with his written report as well as the analysis of the cell phone and text messages from the phone number ending in 7513. [*Id.*] DHO Craddock further noted that two additional phone numbers that sent text messages to the cellphone were the same as numbers listed on Ms. Arias's prison phone records as "other relation[s]." [*Id.*] DHO Craddock imposed the same sanctions that followed the initial DHO

11

hearing. [*Id.*] DHO Craddock completed the written report on April 23, 2019, and Ms. Arias was provided a copy of the written report on May 4, 2018. [*Id.* at 6.]

## II.   Discussion

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A prisoner may use a habeas corpus petition to challenge prison officials' refusal to restore good-conduct time when the restoration would shorten her sentence. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002).

Ms. Arias raises two claims in her Petition for restoration of good-conduct time. First, she claims that the disciplinary process regarding the July 31, 2017 incident violated her constitutional right to due process. Second, she asserts that the disciplinary decision is based on Officer Garcia's false allegations in a retaliatory incident report. For the reasons that follow, the Court concludes that Ms. Arias is not entitled to a writ of habeas corpus based on either of these claims.

### A. Due Process

Ms. Arias's claim regarding the disciplinary process is a procedural due process claim. Depriving an inmate of good time credits "as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). The "process constitutionally due" requires prison disciplinary proceedings to conform to the following rules:

> the inmate must receive: (1) advance written notice of the disciplinary charges;
> (2) an opportunity, when consistent with institutional safety and correctional
> goals, to call witnesses and present documentary evidence in his defense; and
> (3) a written statement by the factfinder of the evidence relied on and the reasons
> for the disciplinary action....

*Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). Each of these requirements was met in this case.

First, Ms. Arias received advance written notice of the disciplinary charges. She received the incident report prior to the initial UDC hearing when Lieutenant Gutierrez met with her to discuss Officer Garcia's allegations. She acknowledged receiving a copy of the incident report more than 24 hours before the initial DHO hearing. And she was again advised of the charges against her prior to the second DHO hearing conducted by Mr. Craddock.

Second, Ms. Arias was provided the opportunity to call witnesses and present documentary evidence during the disciplinary process as well. Lieutenant Gutierrez interviewed the other inmates at FPC-Danbury that Ms. Arias requested on the same day that the incident in the prison camp gym occurred. Although the Regional Director determined that DHO J. Potter should have permitted the witnesses to offer statements or testify at the initial DHO level proceeding, this error was corrected by the remand for a new hearing. Ms. Arias did not request that these witnesses be called again, but asked for DHO Craddock to call FPC-Danbury's Correctional Counselor and Officer Velez at the second hearing. DHO Craddock obtained written statements from both of these witnesses because they were not at the facility where the second DHO hearing took place. Prison officials have broad discretion in conducting disciplinary hearings, and requiring a written statement instead of live testimony does not violate an inmate's procedural due process rights where they provide even a limited explanation for why that decision is made. *Espinoza*, 283 F.3d at 953 (finding no due process violation where an inmate in another facility was not transported to give live testimony at the hearing, but provided a written statement in support of Mr. Espinoza's denial of the disciplinary charges that was entered in the hearing record).

Finally, Ms. Arias was provided a written statement by the factfinders at each stage of the process, which included the evidence relied on and the reasons for the disciplinary action taken. Although the record does not establish when Ms. Arias was provided a copy of DHO J. Potter's written report following the initial hearing, she clearly received it prior to her appeal and does not claim otherwise. [*See* Craddock Decl., Ex. H at 3 (Ms. Arias's Regional Administrative Remedy Appeal form references the medical assessment for Officer Garcia discussed in DHO J. Potter's written report).] She also does not claim that the BOP failed to provide her with a copy of DHO Craddock's report, which indicates that she was given a copy on May 4, 2018.

Because the procedural due process requirements were met in this case, Ms. Arias's first claim fails, and her arguments to the contrary do not change this result. Ms. Arias argues that her due process rights were violated because she did not receive the written DHO report for 90 days after the decision, and the BOP's policy requires the written report to be provided within 15 days. [Pet. at 7.] The Inmate Discipline Program Statement states, "The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision." [Craddock Decl., Ex. A at 34.] The hearing was held on April 6, 2018, the written report was completed on April 23, 2018, and the record shows that she received a copy of DHO Craddock's written report on May 4, 2018. Assuming that the date of the "decision" is the date the written report was completed, Ms. Arias received the report within 9 working days, which would comply with the prison disciplinary rules.

More fundamentally, however, even if the date of the "decision" refers to the April 6th hearing and the written report was not provided to her until 20 days later, for several reasons, this

14

does not mean that her constitutional rights were violated.[3] First, a prison official's failure to

comply with a disciplinary regulation during the administrative process does not violate an

inmate's due process rights so long as the constitutional safeguards discussed above are satisfied.

*Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty

interest in having … prison officials follow prison regulations."); *Martinez v. Fisher*, No. 13-cv-

1150 (ADM/TNL), 2015 WL 3756150, at*4–6 (D. Minn. June 11, 2015) (rejecting claim based

on failure to provide a copy of the incident report within the 24-hour period indicated in prison

disciplinary rules where minimal constitutional protections were met). Second, the prison

regulation Ms. Arias relies upon does not make production of the written report within 15

working days a mandatory, inflexible deadline. *Martinez*, 2015 WL 3756150, at *6 ("The

regulation only provides that notice 'ordinarily' shall be during this time, which indicates notice

during this [timeframe] is not mandatory."). And finally, Ms. Arias has not shown that any

arguable flaw in providing her the written report within the ordinary 15-day window would have

resulted in a different outcome in the disciplinary proceeding. She does not complain that this

alleged late delivery prevented her from appealing DHO Craddock's decision or otherwise

contesting the discipline imposed in accordance with the BOP's disciplinary procedures. *See*

*Spencer v. Rios*, No. 18-cv-2639 (MJD/TNL), 1998 WL 36030785, at *7 (D. Minn. Apr. 23,

2019)[4] ("[E]ven if prison officials erred in denying Spencer the right to call a witness, Spencer

would still be required to show that the error affected the outcome of his disciplinary

---

[3]     The record does not support Ms. Arias's claim that it took 90 days from the date of DHO
Craddock's decision (April 23, 2018) to receive a copy of the decision.

[4]     For reasons that are unclear, the Westlaw citation for *Spencer* incorrectly indicates the
date of the decision is May 11, 1998. However, the Court's Case Management and Electronic
Case Filing records reflect the April 23, 2019 date for Magistrate Judge Tony Leung's decision.

proceeding."); *Adams v. Fed. Bur. of Prisons*, No. 11-cv-2862 (MJD/SER), 2011 WL 7293381, at *2 (D. Minn. Dec. 6, 2011) (same and collecting cases).

For all these reasons, the Court concludes that Ms. Arias is not entitled to a writ of habeas corpus based on a violation of her procedural due process rights.

### B. Sufficient Evidence

Ms. Arias's claims that Officer Garcia fabricated the incident report and that several pieces of evidence failed to support DHO Craddock's findings are properly construed as challenges to the sufficiency of the evidence. In this context the Due Process Clause demands that "the findings of the prison disciplinary board [must be] supported by some evidence in the record." *Espinoza*, 283 F.3d at 951–52 (quoting *Superintendent v. Hill*, 472 U.S. at 454). The "some evidence" standard is quite deferential to prison officials. It "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quotation marks omitted). "If there is any evidence in the record that could support the finding of the disciplinary authority, then the sanctions comport with due process." *Id.* (quotation marks omitted).

Here, the record contains substantial evidence supporting the DHO's imposition of discipline for possession of the cellular phone. Evidence supporting the disciplinary decisions includes the statements of several witnesses that a telephone charger was found in Ms. Arias's bag. Also, the cellular phone was recovered near her possessions. And subsequent forensic examination of the phone linked text messages to Ms. Arias's daughter and matched several phone numbers to those Ms. Arias connected to family members in the prison phone system. This evidence is easily sufficient to support the BOP's determination that Ms. Arias violated Code 108 by possessing a cellular phone.

The record also contains evidence supporting the determination that Ms. Arias violated Code 224 for minor assault, although the evidence on this point is admittedly less robust. Officer Garcia's first-hand account states that Ms. Arias pushed him and left a scratch on his neck. The DHO found that these accusations were consistent with the subsequent medical examination, which showed raised skin on the neck and discussed a lower back muscle strain. At least one of the inmate witnesses who provided a statement to Lieutenant Gutierrez confirmed that Ms. Arias and Officer Garcia were involved in a physical struggle over the bag. Given the significant deference the Court is required to show to the prison official's disciplinary decision in a case like this, the Court concludes that there is enough evidence to satisfy the "some evidence" standard regarding the sanctions for a minor assault.

Ms. Arias submitted several documents contesting the sufficiency of the evidence. [*See* ECF Nos. 12, 13 & 15.] For example, Ms. Arias: (1) notes that Lieutenant Gutierrez originally recommended that the charges be expunged after his investigation was completed; (2) contests the findings in the report of the forensic examination of her phone; (3) asserts that someone accessed her personal email account and attempted to incriminate her by sending a message to her daughter and asking for a reply because "something had happened to me"; (4) points out that none of the three inmate witnesses stated that she pushed or otherwise had physical contact with Officer Garcia; and (5) alleges that Officer Garcia fabricated the incident report in retaliation against her. [ECF No. 13.] Unfortunately for Ms. Arias, in a habeas proceeding like this one, the governing standard requires a court to "reject the evidentiary challenge by a petitioner and uphold the DHO's finding" whenever there is "'some evidence' to support the finding of the DHO." *Martinez-Fuentes v. Fisher*, No. 10-cv-00988 (PJS/JJK), 2011 WL 2112428, at *3 (D. Minn. Apr. 5, 2011) citing *Superintendent v. Hill*, 472 U.S. at 457). The Court may not reweigh

the evidence and substitute its own judgment for that of the DHO. Because there is some

evidence in this record that supports the decision reached by DHO Craddock, this is not a

situation where "the sanctions are wholly unsupported by the record" that would justify the Court

interceding and granting habeas relief. *Jackson v. Watson*, No. 17-cv-4204 (WMW/BRT), 2017

WL 6459462, a *6 (D. Minn. Nov. 13, 2017) (quoting *Gomez v. Graves*, 323 F.3d 610, 612 (8th

Cir. 2003)).

For these reasons, the Court concludes that Ms. Arias's challenge to the sufficiency of the

evidence should be rejected.

### C.  Other Requests for Relief

In addition to the assertion that she lost good-conduct time, which affects her projected

release date, Ms. Arias also asserts that she was wrongfully placed in segregated confinement for

three months as a result of the incident and suffered emotional and physical harm. [Pet. at 7–8,

Grounds Three and Four.] She claims that it was unlawful for the disciplinary sanctions to have

affected her security classification, which led to her transfer from a low security federal prison

camp to a more secure facility. [*Id.*] She asserts that the actions of the BOP officials who

imposed the discipline violated her rights under the Eight Amendment and Fourth Amendment.

[*Id.*] In part, her prayer for relief requests: a return of certain privileges during her period of

incarceration, including a return to a low security facility; a monetary settlement; and an order

removing the reporting officer from his post and "charg[ing] [him] for false statement &

retaliation." [*Id.* ¶ 15.] These claims and requests for relief are not properly before the Court in a

habeas proceeding.

"If the prisoner is not challenging the validity of [her] conviction or the length of [her]

detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy."

*Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) (quoting *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996)). Claims that relate to a prisoner's conditions of confinement—such as claims that she has been mistreated by prison officials or that she should be transferred to a lower-security facility—may be brought in a *Bivens*-style[5] action. *See id.* at 470–71. They may not be brought in a habeas proceeding.

Under *Spencer* and *Kruger*, the only claims properly before the Court in this habeas proceeding are for restoration good-conduct time due to alleged procedural errors and a lack of sufficient evidence. The remaining claims all relate to conditions of confinement, and can only be adjudicated in a federal civil rights complaint. *Davis v. Fisher*, No. 13-cv-1024 (PJS/SER), 2013 WL 3974520, at *1–2 (D. Minn. Aug. 1, 2013). Because the Court does not have jurisdiction over those claims in this habeas action, they should be dismissed without prejudice.

## Recommendation

Based on the foregoing, the Court makes the following recommendation:

1. The Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 **[ECF No. 1]** should be **DENIED**.

2. Ms. Arias's conditions-of-confinement claims should be **DISMISSED WITHOUT PREJUDICE**.

Date: October 21, 2019

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

---

[5]    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.