UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ESTHER ARIAS,<br><br>                              Petitioner,<br><br>v.<br><br>NANETTE BARNES, *in her capacity as warden* of *Federal Correctional Institution – Waseca*,<br><br>                              Respondent. | Civil No. 19-1326 (JRT/KMM)<br><br>ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Esther Arias, Reg. No. 26214-038, FCI – Danbury, Route 37 Danbury, Connecticut 06811, *pro se*.

Ana H. Voss and Andrew Tweeten, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for respondent.

Petitioner, Esther Arias, then an inmate at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"), filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The Magistrate Judge filed a Report and Recommendation ("R&R") that denied Arias's Petition on the basis that she failed to demonstrate either (1) a Due Process violation or (2) insufficient evidence supporting the Federal Bureau of Prison's ("BOP") disciplinary action. After a de novo review of the record, the Court will overrule Arias's objection, adopt the R&R, and deny Arias's Petition for a Writ of Habeas Corpus.

1

**BACKGROUND**

I.  **FACTUAL BACKGROUND**

On July 31, 2017, Arias purportedly possessed a cellular phone and assaulted a corrections officer, Officer Garcia, while at the Federal Prison Camp in Danbury, Connecticut ("FPC-Danbury").[1] (Decl. of Kenneth ("Craddock Decl."), Ex. D at 1, 3, July 3, 2019, Docket No. 9.) Officer Garcia filed an incident report, charging Arias with violating prison rules established by the BOP. (*Id.*) Specifically, the incident report charged Arias with violating Code 108 which prohibits possession of a "hazardous tool," including "portable telephone[s]" and Code 224 which applies when an inmate "[a]ssault[s] any person." (Craddock Decl., Ex. A at 44, 48.) Codes 108 and 224 are classified as "Greatest Severity Level Prohibited Acts" and "High Severity Level Prohibited Acts" respectively. (*Id.* at 44, 46.)

The BOP's Inmate Discipline Program addresses the processes to be followed when an inmate is alleged to have violated prison rules. (*Id.* at 17–20.) An inmate charged with violating BOP rules ordinarily receives the incident report within 24 hours of staff becoming aware of their involvement in the incident. (*Id.* at 17.) The original incident report indicates that it was delivered to Arias on August 30, 2017 at 6:15pm, roughly a month after the alleged incident. (Craddock Decl., Ex. D at 1.) However, a later copy

---

[1] Although Arias filed this Petition after being transferred to FCI-Waseca, she has since been transferred back to FPC Danbury.

2

indicates that it was delivered on July 31, 2017 at 6:15pm. (*Id.* at 3.) FCI-Waseca's Warden, Nannette Barnes ("Warden Barnes") indicates that the date on the original incident report was a typographical error. (Craddock Decl.¶ 9.)

An inmate's alleged misconduct is initially investigated by a prison staff member—one not involved in the incident—who refers the incident report to the Unit Discipline Committee ("UDC") for a hearing. (*Id.*, Ex. A at 18.) Lieutenant Gutierrez conducted the initial investigation of Arias's alleged possession of a cellular phone and assault of Officer Garcia. (*Id.*, Ex. D at 2.) Lieutenant Gutierrez began investigating on July 31, 2017 and met with Arias to inform her of her rights. (*Id.*) In the initial investigation, Arias provided a statement saying that she did not possess a cellular phone or assault a corrections officer. (*Id.*) She asked Lieutenant Gutierrez to interview specific inmates, which Lieutenant Gutierrez did. (*Id.*) Lieutenant Gutierrez ultimately concluded that "[b]ased on the facts presented in the body of the incident report, and the inmate's comments, it is the conclusion of this investigator the body of the report does not support the charges given." (*Id.*) Lieutenant Gutierrez referred the incident report to the UDC and recommended that it be expunged. (*Id.*)

If an inmate is charged with violating a disciplinary rule in the "Greatest or High severity" category—including Codes 108 and 224—the UDC automatically refers the incident report to the Disciplinary Hearing Officer ("DHO") for further review. (*Id.*, Ex. A at 23.) On August 4, 2017, the UDC conducted a hearing and referred the charges to the

DHO based on the severity level of the offenses. (*Id.*, Ex. D at 3.) During the UDC hearing, Arias was informed of her rights regarding the DHO hearing and requested a staff representative and three witnesses be called at the DHO hearing to corroborate her version of the events. (*Id.*, Ex. F.)

On August 23, 2017, DHO Potter held a hearing on the incident report. (*Id.*, Ex. G. at 1.) Based on the evidence, DHO Potter concluded that Arias violated Codes 108 and 224 and imposed disciplinary sanctions. (*Id.* at 5.) For violating Code 108, Arias was disallowed 40 days of good conduct time, forfeited 100 days of non-vested good conduct time, and subjected to 60 days of disciplinary segregation. (*Id.*) For violating Code 224, Arias was disallowed 27 days of good conduct time, subjected to 30 days of disciplinary segregation, and lost 90 days of phone privileges. (*Id.*)

On December 13, 2017, Arias appealed the DHO's decision. (*Id.*, Ex. H. at 3.) On February 1, 2018, the Regional Director remanded the incident report to FPC-Danbury for a rehearing. (*Id.* at 1.) The Regional Director remanded the incident report because Arias was denied the right to have witnesses appear at the DHO level of the disciplinary process[2] and did not sign the acknowledgement form that her requested staff

---

[2] DHO Potter did not call Arias's requested witnesses because "[the witnesses'] knowledge of the events was adequately contained in the supporting document[ation]" from the investigation. (Craddock Decl., Ex. G at 2.) However, the Regional Director determined that DHO Potter's decision to rely on the earlier witness accounts contained in the record denied Arias the right to have witnesses appear at the DHO level of the disciplinary process. (*Id.*)

4

representative was unavailable, which had necessitated a staff representative change at the DHO level. (*Id.* at 2.) Prior to the second DHO hearing, Arias was given the opportunity to request witnesses and a staff representative. (*Id.*, Ex. I.) The second hearing was conducted by DHO Craddock on April 6, 2018. (*Id.*, Ex. K. at 6.) DHO Craddock concluded that Arias violated Codes 108 and 224 and imposed the same sanctions as DHO Potter had after the first hearing. (*Id*. at 4–5.) DHO Craddock completed his written report on April 23, 2018 and Arias was provided a copy on May 4, 2018. (*Id.* at 6.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Upon the filing of an R&R by a Magistrate Judge, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. Local R. 72.2(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. Local R. 72.2(b)(3).

### II.   PETITIONER'S OBJECTIONS

Arias objects to the Magistrate Judge's findings that she failed to demonstrate either (1) a Due Process violation or (2) insufficient evidence supporting the BOP's disciplinary action. Regarding due process, Arias argues that the BOP failed to provide advance written notice of the disciplinary charges against her because the incident report was allegedly not delivered to her within 24 hours of staff becoming aware of the incident.

5

Arias further claims that the BOP violated her due-process rights by failing to hold a UDC hearing before referring the incident report to DHO Craddock for a rehearing.

Regarding sufficiency of the evidence, Arias argues that three telephone numbers found on the cellular phone cannot be tied to her because the TRUVIEW report pages state that no information was found for the given criteria. Arias also claims that a text message sent on July 31, 2017 at 4:31 p.m. from her daughter resulted from someone hacking her TRULINCS account and sending a message prompting a reply from her daughter. Specifically, she claims she could not have accessed her TRULINCS account at the time the outgoing message was sent because she "was in the SHU by 12 noon." Lastly, Arias refutes the evidence supporting the Code 224 charge; she relies on a BOP policy that generally requires videotaping when officers use force to control a violent inmate.

### III. DUE PROCESS

Depriving an inmate of good time credits "as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002). To comport with due process, prison disciplinary hearings that result in loss of good time credits must meet the following rules:

> The inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . .

*Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).

First, Arias argues that the BOP failed to provide advance written notice of the disciplinary charges against her. She relies on a copy of the incident report which lists August 30, 2017 as the date she received it. However, based on Warden Barnes' testimony, the August 30, 2017 date was a typographical error. Indeed, the record shows that Arias received the incident report prior to the UDC hearing, which was held on August 4; when Lieutenant Gutierrez met with Arias to discuss Officer Garcia's allegations, Arias acknowledged receiving a copy of the incident report more than 24 hours prior to the first hearing. For these reasons, the Court concludes that Arias received advanced written notice of the disciplinary charges against her.

Next, Arias claims that the BOP violated her constitutional right to due process by failing to hold a UDC hearing before referral of the incident report to DHO Craddock for a rehearing. However, a UDC hearing was held on August 4, 2017, at which time the incident report was referred for a DHO hearing. Moreover, Arias was given the opportunity to call witnesses and present documentary evidence during the disciplinary process. For example, Lieutenant Gutierrez interviewed the witnesses Arias requested in the initial investigation and she was given the opportunity to call witnesses at the second DHO hearing. For these reasons, Arias had the opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in her defense.

Lastly, Arias was provided a written statement by the factfinders at each stage of the process, which included the evidence relied on and the reasons for the disciplinary action. Because the three conditions set forth in *Espinoza* are met, Arias's procedural due process claim fails.

**IV.   SUFFICIENCY OF EVIDENCE**

With regards to sufficiency of evidence, the Due Process Clause requires "the findings of the prison disciplinary board [be] supported by some evidence in the record." *Espinoza*, 283 F.3d at 952 (quoting *Hill*, 472 U.S. at 454). This is a deferential standard that will allow the Court to overturn the prison disciplinary board's findings only when there is absolutely no evidentiary support. *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) ("If there is 'any evidence in the record' that could support the finding of the disciplinary authority, then the sanctions comport with due process." (quoting *Hill*, 472 U.S. at 455–56)). Because the Court need not "require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," it is sufficient that there be some evidence supporting the prison disciplinary authority's findings. *Espinoza*, 283 F.3d at 952 (quoting *Hill*, 472 U.S. at 455).

The record contains evidence that Arias possessed a cellular phone in violation of Code 108. For example, several witnesses stated that a cellular phone charger was found in Arias's bag; the cellular phone was recovered near her possessions; and outgoing text messages were sent to Arias's daughter and other phone numbers matching those Arias

8

previously called using the prison telephone. Arias argues that three telephone numbers found on the cellular phone cannot be tied to her because some of the TRUVIEW report pages that she included with her Objections state that "[n]o information was found for the given criteria." However, these TRUVIEW report pages reflect just one category, "Money Sent," which shows only that none of the telephone numbers found on the cellular phone had sent money to Arias. (*See* Decl. of Jake Bush ("Bush Decl.") ¶ 5, Ex. B. at 2, Nov. 27, 2019, Docket No. 32.) In fact, other categories in the TRUVIEW report— "Phone Lists," "Calls," and "Visitor Lists"—tie the telephone numbers found on the cellular phone to Arias. (*Id.* at 3–4, 7.)

Arias also claims that a text message sent on July 31, 2017 at 4:31 p.m. from her daughter was the result of someone hacking Arias's TRULINCS account and sending a text message designed to solicit a reply. Specifically, Arias claims that she could not have accessed her TRULINCS account at the time the outgoing message was sent because she was in the special housing unit ("SHU") by noon on July 31. However, the record shows that Arias was not in the SHU until 2:51 p.m. (*See* Bush Decl. ¶ 5, Ex. C.) Arias's claim that there is insufficient evidence of a Code 108 violation is therefore not supported by the record.

In addition, the record contains evidence that Arias assaulted Officer Garcia in violation of Code 224. For example, Officer Garcia testified that "Arias . . . pushed me forcefully using both hand and using her body to take possession of the bag . . . Arias

9

pushed me with two open hands, scratching my neck." (Craddock Decl., Ex. D at 1, 3.) This account is supported by a medical report showing raised skin on Officer Garcia's neck and a lower back muscle strain. It is further supported by an inmate witness who reported seeing a physical struggle between Arias and Officer Garcia over the bag.

Arias seeks to refute the evidence supporting the Code 224 charge, noting that the BOP failed to provide video evidence of the assault. The BOP has a policy of generally requiring corrections officers to videotape when they use force to control a violent inmate. However, there is evidence that Officer Garcia did not anticipate the use of force. Moreover, the BOP has a policy that staff "ordinarily shall first attempt to gain the inmate's voluntary cooperation before using force." There is no evidence indicating that Officer Garcia used any more than a minimal amount of force to retrieve the bag from Arias.

Because there is, at the very least, some evidence in the record supporting the DHO's findings that Arias violated Codes 108 and 224, the Court will reject Arias's challenge to the sufficiency of the evidence.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Objections to the Report and Recommendation [Docket No. 21] are **OVERRULED**;

    2.      The Report and Recommendation [Docket No. 18] is **ADOPTED**; and

    3.      Petitioner's Petition for a Writ of Habeas Corpus [Docket No. 1] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: July 6, 2020  
at Minneapolis, Minnesota.

                                                            JOHN R. TUNHEIM  
                                                               Chief Judge  
                                                      United States District Court